Filed 5/23/22  Rancho Carlton Properties, LLC v. Radnor CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RANCHO CARLTON PROPERTIES, LLC,<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>JOSH RADNOR, as Trustee, etc.,<br><br>        Defendant, Cross-complainant and Respondent;<br><br>SCOTT ANDERSON et al.,<br><br>        Cross-defendants and Appellants. | B306473 & B309499<br><br>(Los Angeles County Super. Ct. No. BC662602) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Reversed with directions.

Macias Counsel and Sean E. Macias; Greines, Martin, Stein & Richland, Robert A. Olson and Jeffrey Gurrola; Fisher Wolfe and David R. Fisher for Plaintiff, Cross-defendant and Appellant.

Robie & Matthai, Edith R. Matthai, Kyle Kveton and Leigh P. Robie; Cunningham, Treadwell & Bartelstone and James H. Treadwell for Defendant, Cross-complainant and Respondent.

_____

Plaintiff, cross-defendant, and appellant Rancho Carlton Properties, LLC, appeals from a portion of a judgment entered in favor of defendant, cross-complainant, and respondent Josh Radnor, as trustee of The Josh Radnor Trust, in this quiet title action. An express written easement allows Radnor to maintain certain improvements on Rancho Carlton's property. On appeal, Rancho Carlton contends the trial court misinterpreted the scope of the easement and compounded the error by improperly imposing an equitable easement contrary to the terms of the deed.

We conclude the grant deed for Radnor's property provides an easement over Rancho Carlton's property for specific physical improvements, namely, a barbecue, a walkway, and a retaining wall. The deed conveys an exclusive right to use the area where the improvements are located as a necessary incident of the easement. The deed also conveys a non-exclusive right to use the remainder of the easement area to the extent the use is a necessary incident of the easement. The easement will terminate when the barbecue, the walkway, the retaining wall, and the house on the dominant estate are demolished. Radnor's repairs and renovations to the improvements located on Rancho Carlton's property did not overburden the easement. Because the relief provided in the judgment was based on an erroneous

2

interpretation of the grant deed, the judgment must be reversed to allow the trial court to enter a new and different judgment providing relief to enforce Radnor's rights under the easement.

**FACTS**

## Creation of Easement

In 1965, Wallace Van Allen Jones owned a large property in the Hollywood Hills improved with a single-family house. In the backyard on the west side, a walkway connected the house to a barbecue area wedged into the hillside. In the backyard on the east side, stone steps led up to a small stone patio.

Prior to September of that year, Jones subdivided the property into multiple lots. As a result, the house is located on Lot 20 and has a street address 6387 Bryn Mawr Drive. To the west is Lot 19. North of these are Lots 93 and 94. The new property lines bisected the improvements in the backyard. Part of the walkway and the barbecue ended up on the eastern corner of Lot 19. A small sliver of the barbecue area was on Lot 93. A portion of the steps on the east side of the yard were now located on Lot 94, which led up to the patio now located on Lots 93 and 94.

In September 1965, Jones sold the house on Lot 20 to Radnor's predecessor-in-interest along with a handful of easement rights that allow the owner of the dominant estate (Lot 20) to keep using portions of the surrounding properties (Lots 19,

3

93, and 94) for the existing backyard improvements.[1]  The grant deed conveyed five property interests to Radnor's predecessor-in-interest as follows.

Parcel 1 was Lot 20, as recorded in the county records, in fee simple.  The grantor reserved an easement for himself and his successors over the eastern 6 feet of Lot 20 for sewer purposes with a related right of ingress and egress

Parcel 2 was "An easement for barbecue, a walkway and concrete and brick retaining wall and incidental purposes" over a large portion of Lot 19 with specific metes and bounds.  The improvements occupied a fraction of the easement area, in its northeast corner.  The deed additionally stated, "It is understood and agreed that the above easement will terminate when the improvements now located on the above described portions of Lots 19 and 20 . . . have been demolished."

Parcel 3 addressed the portion of the barbecue located on Lot 93 by conveying "An easement for a barbecue and incidental purposes" over a narrow strip of Lot 93 adjacent to Parcel 2.  The metes and bounds of Parcel 3 were 0.76 feet wide on the west end and just 0.12 feet wide on the east end.

The improvements on the east side of the backyard, which are not at issue in this case, were conveyed through Parcels 4 and 5.  Parcel 4 provided "An easement for a patio, concrete and brick retaining walls and incidental purposes" over a portion of Lot 93 that was described through metes and bounds.

Parcel 5 provided "An easement for concrete and brick retaining wall, steps and patios and incidental purposes" over a

---

[1] A copy of the 1965 grant deed and a diagram of the relevant portion of the property as it exists currently are attached to this opinion as part of the appendix.

4

portion of Lot 94 that was described through metes and bounds. In addition, the deed provided that "the above easement will terminate when the improvements now located on the above described portions of Lot 20 . . . and Lot 94 . . . have been demolished."[2]

## Construction on Lot 19 and Radnor's Purchase of Lot 20

In 2005, construction began on Lot 19 for a house with the street address of 6393 Bryn Mawr Drive. Portions of the three-level house, which included its own barbecue area, were built on the Parcel 2 easement. As part of the construction, the owner of Lot 19 built a substantial retaining wall in 2007 on the Parcel 2 easement. The 2007 wall, topped with a wrought iron fence, runs between the new construction on Lot 19 and the old improvements all the way to the street with no opening for access. A person can access the easement area on either side of the 2007 wall using a ladder. Audrina Patridge was the first occupant of the house on Lot 19 when she bought it in 2008. The seller and the realtor both informed her of the easement over Lot 19 that was held by the owner of Lot 20.

Lot 20 had a series of owners before Radnor purchased the property in 2007, while construction was still underway on Lot

---

[2] When the property was sold again a few years later, the grant deed omitted the termination provision for the easement over Parcel 5. After the property changed hands a few more times, the termination provision for the easement over Parcel 2 was omitted. The property was transferred four more times, with none of the grant deeds including the termination language, but there is no dispute in this case about the applicability of the 1965 grant deed or the validity of the termination provisions.

19.  The seller's property questionnaire clearly stated that the seller was aware of surveys, easements, encroachments or boundary disputes, as well as the seller's use of neighboring property.  The seller noted, "Make sure easement is part of our title & title of property above on Quebec.  See easements."  In a section for other information, the seller wrote, "See title for historic usage easements."

Radnor's business manager handled the purchase of the property, along with his real estate attorney.  Radnor did not see the seller's questionnaire.  Radnor remembered a conversation with the seller about a different easement, but that was his only memory of discussing easements with the seller.  In 2009, Radnor transferred the property to his trust.  The quitclaim deed identified Lot 20 and all of the easements, but did not contain the termination provisions.  Radnor signed the documents without reading them.

Radnor did not understand that he had an easement over the property to the west of his house for specific improvements.  He believed his property line started at the 2007 wall.  He would have paid less or not bought the property if he knew the area to the west of the house was not part of his property.

On the west side of the backyard, a brick barbecue area was carved into the hillside.  A substantial brick structure was built into the hillside around a rusted silver barbecue grill.  The barbecue was not functional.  The structure had brick countertops on either side of the grill with open space under the counters, and was recessed within a brick retaining wall.  A substantial concrete retaining wall rose up a few feet behind the brick structure.

A brick walkway the width of the barbecue structure extended from the barbecue toward the front of the house. At the point near the barbecue, the brick platform was easily wide enough for a table and chairs, and had decorative mosaic tiles inset in the brick, although some of the tiles were broken.

From the barbecue area, one branch of the walkway connected to the back of the house, while the other branch extended the full length of the west side of the house to the front building line. The bricks in the walkway were uneven, loose, cracked, and broken. Some were overturned from the ground in places. At the end of the brick walkway near the front of the house was a simple wooden guardrail from which to look out over the hillside, but the guardrail was rotted and unsafe for young visitors.

A continuous brick retaining wall approximately three- or four-feet high ran the entire west side of the walkway, as well as on either side of the barbecue and a short portion of the east side of the walkway near the barbecue. The slope of the hillside rose behind the wall on all sides. Radnor referred to this wall as the garden wall. The garden wall was bulging from the hillside, however, as aggressive trees roots forced the wall out. Another brick wall existed a few feet to the west of the barbecue area, although it was not clear from the evidence whether this was a retaining wall, or simply for privacy and landscaping purposes. Bamboo grew in the hillside between the garden wall and the privacy wall.

Attached between the house and the brick walkway was a redwood deck with a sunken seating area that had rotted from water damage and termites. The edge of the deck had been placed on top of the brick walkway, creating a step from the deck

7

to the brick.  If Radnor went on the deck without shoes, he got splinters.

## Repair and Renovation

Radnor hardly ever used the area on the west side of the house.  When he did, he sat outside, read a book, or entertained guests.  He thought the area could be repaired to be more enjoyable, so he hired a landscape designer in 2014.

Radnor removed the existing wood deck and a section of the brick walkway along the west side near the front of the house.  He replaced it with a new wood deck covering both areas.  He excavated the ground so the deck sat at one level, flush with the house and the rest of the brick walkway.  The deck construction required site and soil preparation, grading, extension of the deck beyond existing tree roots, and the addition of small piles for support on the outside.  At the suggestion of the designer, when Radnor replaced the southern portion of the brick walkway with wood, he added a cantilever lookout deck to the end of the walkway, which extended the footprint of the walkway by three feet toward the street.  Tubes were placed underneath to support the cantilever deck.  The company that installed the new deck, including the additional three feet for the cantilever portion, considered the work to be repairing and re-supporting an existing deck, which did not require permits.  The new configuration of the surface allowed him to add a long table to dine in the area.

Radnor also replaced broken bricks in the walkway and had the existing brick pressure washed.  He installed lighting, removed a dead tree, and installed a new tree with a tree box.

Radnor had the old silver barbecue grill and portions of the brick barbecue structure removed. Some of the existing brick structure was filled in, a gas line was installed, and a new brick barbecue with a chimney was built into the existing brick foundation, reusing many of the old bricks as building material. The new structure can operate as a fireplace or a barbecue, fueled by wood or gas. There is an area in the brick structure for wood storage. Radnor has couches in front of the structure for an area to sit.

The brick garden wall and the brick privacy wall were not demolished in the remodeling. A second, shorter brick wall with a footing was constructed next to the garden wall to strengthen it where it was leaning away from the hillside. Radnor's remodeling did not change the way the space was used.

## Sale of Lot 19 to Rancho Carlton

In February 2016, Patridge intended to sell her property. She sent a notice of termination of the easement to Radnor, which she stated was based on Radnor's demolition of the brick improvement originally constructed on or about 1965. She claimed that he had demolished the only remaining improvement for which the easement was originally granted. She notified him to remove the original brick improvement and all other building debris in the area from her property, or she would be forced to remove it and hold him liable for the cost.

Radnor learned of the easement when he received Patridge's notice. He gave the letter to his attorney, who responded to Patridge that her notice was legally defective. The attorney warned that her notice constituted slander of title and

any modification of Radnor's easement area would create substantial liability for her, and in addition, she now needed to advise her broker and all prospective buyers of the potential to inherit her liability.

Scott Anderson and his mother own Rancho Carlton.[3] When Scott and his wife Diana Anderson viewed the property for sale at 6393 Bryn Mawr Drive, the realtor explained the existence of the easement. Rancho Carlton made an offer on February 25, 2016. Patridge rescinded the notice of termination, which Rancho Carlton acknowledged in writing during the escrow closing, and Rancho Carlton completed the purchase on March 10, 2016.[4]

Scott and Diana live part of the year at the property on Lot 19 and part of the year in Tempe, Arizona. Rancho Carlton pays the property taxes and the insurance costs for Lot 19. To access the area east of the 2007 wall, the Andersons have to step over the back of their own barbecue or use a ladder to reach the top of the 2007 wall, climb around the wrought iron fence on the top, and step onto the hillside. After crossing the hillside between the homes, they have to climb down over the garden wall to reach the walkway and the barbecue area. The parties cannot simply shift the property line dividing Lots 19 and 20 to the west between Rancho Carlton's house and the brick improvements, because the remaining area of Lot 19 would be too small to constitute a legal lot.

---

[3] Because more than one party shares the last name Anderson, they will be referred to individually by their first names for ease of reference.

[4] No description of the easement held by the owner of Lot 20 is stated in the grant deed for Lot 19.

In 2018, the owners of both properties received notices from the City of Los Angeles that the wood deck, brick fireplace, electrical lighting, and appurtenances were constructed without required permits and approvals.  Each was ordered to correct the violations and pay an inspection fee.  The City did not consider the conditions to be dangerous or a hazard to health or safety; certain items simply needed to have a permit.

## PROCEDURAL HISTORY

### Pleadings and Jury Trial

On May 24, 2017, Rancho Carlton filed a complaint against Radnor.  On August 20, 2019, Rancho Carlton filed the operative fourth amended complaint against Radnor for declaratory relief, quiet title, injunctive relief, trespass, and nuisance.  Radnor filed a cross-complaint against Rancho Carlton, Scott, and Diana, for interference with easement, declaratory relief, quiet title, and injunctive relief.

A jury trial was held over 10 days between January 22 and February 4, 2020, on the causes of action for trespass and nuisance.  The jury found that Radnor did not demolish all of the improvements on Lot 19 that were set forth in the 1965 grant deed.  As a result, he was not liable for trespass.  The jury also found that Radnor did not create or permit a condition to exist that was harmful to health, so was not liable under the nuisance claim.

## Statement of Decision

During trial, the court interpreted the Parcel 2 easement to be nonexclusive. After further evidence and argument on the remaining issues in the case, including quiet title, declaratory relief, and injunctive relief, the trial court issued its statement of decision.

The court found the most equitable solution was to give Radnor exclusive use of the portion of the easement that was east of the 2007 wall. Allowing the owner of the servient estate to use the deck, walkway, seating area and barbecue grill would be appropriate if the properties were on flat ground, the barbecue area was larger, and it was further from Radnor's living area. A large portion of the easement area, however, was on a steep slope. There would be scheduling disputes between the parties that could only be resolved if the parties could work together. The owner of the dominant tenement would not want neighbors and their guests cooking and socializing within a few feet outside the living room at any time of day without permission. Radnor would not have assumed this was a shared area when he purchased his property. Restricting Rancho Carlton's access to the easement on the east side of the 2007 wall would avoid future conflicts and litigation between the owners of the subject properties.

The court found the easement was not simply for the use of a barbecue grill and a walkway. The word "barbecue" in the phrase "[a]n easement for barbecue, a walkway and concrete and brick retaining wall and incidental purposes" meant the area may be used for "a social gathering."

The court also found the easement could not be terminated simply by demolition of the improvements in the barbecue area on Lot 19. If the only improvements relevant to termination were located on Lot 19, then the grantor did not need to refer to Lot 20 in the termination provision. The court found, therefore, that termination of the easement will only occur when the improvements on both Lots 19 and 20 are demolished.

The court concluded that Rancho Carlton had not provided sufficient evidence from which to determine a monetary amount that would properly compensate for awarding Radnor exclusive use of the area east of the 2007 wall. Rancho Carlton was aware of the easement when the property was purchased, but Radnor was not aware of the easement when he purchased the dominant tenement and did not learn of it until after he had renovated the barbecue area. Even assuming Radnor had constructive notice of the easement, Radnor was not on notice that he would be forced to share the deck and barbecue area immediately outside his living room with unknown neighbors. It was reasonable to assume no one else would use the area without his permission.

The court concluded its prior ruling that the language of the 1965 grant deed provided a non-exclusive easement over Lot 19 did not foreclose its equitable ruling on Radnor's causes of action for declaratory relief, injunctive relief, and quiet title. The court made additional rulings about taxes and permits, and found Radnor was the prevailing party.

**Amended Judgment**

On May 7, 2020, the trial court entered judgment against Rancho Carlton on the fourth amended complaint. The court

13

entered judgment in favor of Radnor on the causes of action in the cross-complaint for declaratory relief and quiet title, but in favor of Rancho Carlton, Scott, and Diana on the cause of action for interference with easement.

Based on the jury's finding that the improvements on Lot 19 were not demolished, the court found that the easement burdening Lot 19 had not been terminated under the express terms of the 1965 grant deed. Further, there was no evidence that the single-family residence located on Lot 20 has been demolished, so the conditions required for termination of the easement had not occurred.

The court found that the current uses do not overburden the easement and are within the intended uses of the easement. The court ruled that Radnor and his successors-in-interest, as a necessary incident and as necessary to protect his rights as an easement holder, would have the sole use and exclusive control of the portion of the easement area east of the 2007 wall for its intended use and purpose. The court found the intended use and purpose of the easement included, but was not limited to, barbecue, defined as a social gathering at which barbequed food is eaten, walkway, concrete and brick retaining wall and incidental purposes. Radnor and his successors-in-interest must maintain the improvements in his area of control in good repair, and would be solely responsible for all costs and expenses associated with the maintenance and repair of the existing barbecue structure, all walls, decks, brick areas, railings, and the like, specifically located within the area east of the 2007 wall.

The court ruled that Rancho Carlton and its successors-in-interest, as a necessary incident to and as necessary to protect its rights, would have sole use and exclusive control of that portion

14

of the easement area west of the 2007 wall.  Rancho Carlton and its successors-in-interest were responsible for all costs and expenses associated with the maintenance and repair of improvements west of the 2007 wall, including the 2007 wall, the adjacent staircase, and the portions of the residence that were built in the easement area west of the 2007 wall.

Radnor was ordered not to interfere with maintenance or repair of the 2007 wall.  Rancho Carlton was prohibited from creating a gate or passageway through or around the 2007 wall.  Rancho Carlton, Scott, Diana, and their successors-in-interest were enjoined from obstructing or interfering with the sole use and exclusive control of Radnor and his successors-in-interest from the area east of the 2007 wall.  However, the court provided Rancho Carlton with access to an area five feet east of the 2007 wall for maintenance or repair of utility lines located on the east side of the 2007 wall that service Rancho Carlton's property, including an irrigation pipe, low voltage electrical line, gas line, water line, and drainage pipe.

Radnor was ordered to work with the City of Los Angeles to get proper permits for any items east of the 2007 wall that required permits.  Radnor was also assigned responsibility to pay any fines or fees associated with the permitting process.  Rancho Carlton and its successors-in-interest were required to cooperate in obtaining permits.

In the event that the Los Angeles County Tax Assessor increases the property tax assessment on Lot 19 as the direct result of any repairs or improvements completed in 2014 and 2015 on the area east of the 2007 wall, the supplemental property tax assessments would be paid by Radnor or his successors-in-interest until such time as Rancho Carlton transfers all or any

15

interest in the subject property. Nothing in the judgment was to cause a lien to be imposed on either property related to any tax consequences.

Radnor was the prevailing party. He was to provide the court with the legal description of the location of the 2007 wall. Rancho Carlton filed a timely notice of appeal from the May 7, 2020 judgment.

On November 12, 2020, the trial court entered a second amended judgment by inserting a legal description of the location of the 2007 wall and awarding costs of $29,262.73 to Radnor. Rancho Carlton filed a timely notice of appeal from the second amended judgment as well. The two appeals have been consolidated.

## DISCUSSION

### General Law of Easements

"'An easement is a restricted right to specific, limited, definable use or activity upon another's property, which right must be *less* than the right of ownership.' [Citation.]" (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702 (*Scruby*).) The easement holder does not own the property, but simply possesses a right to use another person's land for a specific purpose. (*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1599 (*Blackmore*).) An easement "appurtenant" attaches to the dominant tenement and burdens the servient tenement. (*Ibid.*)

Every easement includes "secondary easements" to accomplish the things necessary for full enjoyment of the easement, such as the right to make repairs on the servient

16

tenement.  (*Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 428 (*Dolnikov*).)  "The owner of the dominant tenement must use his or her easements and rights in such a way as to impose as slight a burden as possible on the servient tenement.  [Citation.]" (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.)  ""'It is well settled that the owner of an easement cannot change its character, or materially increase the burden upon the servient estate, or injuriously affect the rights of other persons, but within the limits named he may make repairs, improvements, or changes that do not affect its substance.'"  [Citations.]" (*Dolnikov, supra,* 222 Cal.App.4th at p. 429.)

"Every incident of ownership not inconsistent with the easement and the enjoyment of the same is reserved to the owner of the servient estate.  [Citations.]" (*Scruby*, *supra*, 37 Cal.App.4th at p. 702.)  "The owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose.  [Citations.]" (*Scruby*, *supra*, 37 Cal.App.4th at pp. 702–703.)

"'Neither party can conduct activities or place obstructions on the property that unreasonably interfere with the other party's use of the property.  In this respect, there are no absolute rules of conduct.  The responsibility of each party to the other and the "reasonableness" of use of the property depends on the nature of the easement, its method of creation, and the facts and circumstances surrounding the transaction.'  [Citation.]" (*Dolnikov, supra,* 222 Cal.App.4th at pp. 428–429.)  "In determining whether the holder of the servient estate has unreasonably interfered with exercise of an easement, the interests of the parties must be balanced to strike a *reasonable*

17

*accommodation* that maximizes overall utility to the extent consistent with effectuating the purpose of the easement . . . and subject to any different conclusion based on the intent or expectations of the parties . . . .' (Rest.3d Property, Servitudes, § 4.9, com. c, p. 583, italics added.)" (*Id.* at p. 430.)

**Standard of Review**

The language of an express easement determines the scope of the easement. (*Blackmore, supra,* 150 Cal.App.4th at p. 1599.) If the language is clear and explicit in the conveyance, interpretation of the easement is a question of law that we review de novo. (*Ibid*; *Southern California Edison Co. v. Severns* (2019) 39 Cal.App.5th 815, 822 (*Severns*).)

"In construing an instrument conveying an easement, the rules applicable to the construction of deeds generally apply." (*Scruby, supra,* 37 Cal.App.4th at p. 702.) "The recorded conveyances 'must be interpreted as a whole, with each clause aiding the interpretation in the attempt to give purpose to every part, and the interpretation should, where possible, give effect to every part so that no clause is redundant.' (*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 546; see *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507 (*Brandwein*) ['when interpreting a contract, we strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable'].)" (*Severns, supra,* 39 Cal.App.5th at pp. 823–824.)

"The grant of an easement must 'be interpreted liberally in favor of the grantee.' [Citation.]" (*Dolnikov, supra,* 222

Cal.App.4th at p. 428.) "If the language is ambiguous, extrinsic evidence may be used as an aid to interpretation unless such evidence imparts a meaning to which the instrument creating the easement is not reasonably susceptible. [Citation.]" (*Scruby, supra,* 37 Cal.App.4th at p. 702.) "When there is any ambiguity or uncertainty about the scope of an easement grant, the surrounding circumstances, including the physical conditions and character of the servient tenement and the requirements of the grantee, play a significant role in the determination of the controlling intent. [Citation.]" (*Scruby, supra,* 37 Cal.App.4th at p. 705.) ""It is a 'cardinal rule of construction that when a contract [or conveyance] is ambiguous or uncertain the practical construction placed upon it by the parties before any controversy arises as to its meaning affords one of the most reliable means of determining the intent of the parties.' [Citation.]"" [Citations.]" (*Severns, supra,* 39 Cal.App.5th at pp. 824–825.)

To the extent that the material facts are not in dispute, we conduct a de novo review of the rulings regarding the easement. (*Blackmore, supra,* 150 Cal.App.4th at p. 1598, fn. 2.) "To the extent resolution of the appeal turns on the trial court's factual findings, we review such findings under the substantial evidence standard. [Citation.]" (*Severns, supra,* 39 Cal.App.5th at p. 822.) In evaluating challenges to the court's factual findings, we consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment. (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1102.) Under these principles, an appellate court ""must *presume* that the record contains evidence to support every finding of fact . . . ."" [Citations.] It is the

19

appellant's burden . . . to identify and establish deficiencies in the evidence. [Citation.] This burden is a 'daunting' one." (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

"Whether a particular use by the servient owner of land subject to an easement is an unreasonable interference with the rights of the dominant owner is a question of fact for the trier of fact, and its findings based on conflicting evidence are binding on appeal. [Citation.]" (*Scruby, supra,* 37 Cal.App.4th at p. 703.)

We review a court's decision whether to recognize an equitable easement under the abuse of discretion standard. (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1005–1006.) This standard "includes a substantial evidence component: 'We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its discretion. If there is no evidence to support the court's findings, then an abuse of discretion has occurred.'" (*Id.* at p. 1006.)

**Scope of Express Easement**

Our review of the judgment in this case quieting title and ordering declaratory relief begins with the interpretation of the language granting the easement. Rancho Carlton contends the express easement was nonexclusive, limited to specific physical improvements that were listed in the grant deed in connection with Parcel 2, and terminates when those improvements on Parcel 2 are demolished. The parties did not present any extrinsic evidence that was in conflict to aid the court's interpretation of the grant deed, so we independently review the

language of the instrument and the evidence in the record to determine the intent of the original drafters of the easement grant.

## A. Improvements Allowed

We agree with Rancho Carlton that the grant deed provides the owner of Lot 20 with the right to have specific physical improvements located on Lot 19. The grant deed gives Radnor "an easement for barbecue, a walkway and concrete and brick retaining wall and incidental purposes over that portion of Lot 19" described in the deed. The easement area described in the deed covers approximately 40 percent of Lot 19, and the grant deed does not specify the location of the improvements. The deed states, however, that the easement will terminate when the improvements "now located" on the portions of the lots described in the deed are demolished, from which it can be inferred, and all of the parties have assumed, that the easement for "barbecue, a walkway and concrete and brick retaining wall" referred to improvements in existence at the time the easement was created.[5]

_____

[5] The result would be the same if the improvements on Lot 19 were not in existence at the time the easement was created, but instead constructed later. "'An easement granted in general terms, nonspecific as to its particular nature, extent or location, is . . . perfectly valid. It entitles the holder to choose a "reasonable" location and to use such portion of the servient tenement as may be reasonably necessary for the purposes for which the easement was created. The use actually made by the holder over a period of time fixes the location and the nature and extent of the use. [Citation.] Such an easement necessarily

In context, the easement for "barbecue" refers to a physical improvement that was in existence at the time of the grant. The easement terminates when the existing physical improvements are demolished. Parcel 3 provides an easement over a sliver of property less than a foot wide for "a barbecue and incidental purposes," which the parties agree refers to a physical improvement. The most logical explanation for the awkward configuration of the easements is that the grant deed referred to an existing fixed improvement, which was bisected by the property lines created in 1965. This interpretation is consistent with the evidence at trial that a built-in brick barbecue structure straddles the easement areas provided in Parcels 2 and 3. In the context of the adjacent easements and the extrinsic evidence, we interpret the "barbecue" on Parcel 2 to refer to the other portion of the physical improvement authorized on Parcel 3.

The word "barbecue" does not restrict Radnor's use of the easement to social gatherings. Barbecue is the first item in a list of physical improvements, not a limitation on Radnor's use of them. The other easements in the grant deed refer to physical improvements, not activities. Just as the word "patio" does not describe an activity permitted on Parcels 4 and 5, the words "barbecue" and "walkway" do not describe activities permitted on Parcel 2. The easement holder may keep and maintain certain physical improvements on Parcel 2 in their existing locations, but the language of the grant deed does not restrict the easement holder to a particular use of those improvements. Radnor may

carries with it not only the right but also the duty to maintain and repair the structure or facility for which it was created. [Citations.]' [Citations.]" (*Severns, supra,* 39 Cal.App.5th p. 823.)

conduct activities that make any reasonable use of the improvements.

The grant deed allows a walkway on Lot 19. At trial, the parties treated the brick improvements that existed when Radnor purchased the property as corresponding to the improvements described in the grant deed. No evidence or argument established otherwise. The walkway that extended from the brick barbecue at the back of the house was the width of the barbecue structure, broad enough for a couch or table. Extending from that area, one branch of the walkway wrapped around the back of the house, while the other branch extended the length of the west side of the house to the front building line. We note that although the deed referred to the improvement as a walkway, the evidence showed the improvement shared characteristics of a walkway, a patio, and even a deck. It could have been reasonably described in the deed as a walkway or a patio, although neither term provides a complete description of the existing improvement.

The grant deed also provides Radnor with an easement for "concrete and brick retaining wall." It is not clear from the deed or the evidence at trial which of the existing walls, if any, are referred to in the deed. At the time of Radnor's purchase, there was a brick garden wall that was contiguous with the walkway. A few feet west of the garden wall is another brick wall. A stucco retaining wall at the street level extends between Lots 19 and 20. No issue was raised, however, about the retaining wall described in the deed.

23

## B. Exclusive Use of Property at Location of Improvements

Rancho Carlton contends that under the terms of the grant deed, the easement conveyed over Lot 19 is not exclusive, and Rancho Carlton may engage in any activity in the easement area that does not unreasonably interfere with Radnor's easement rights. We conclude the trial court's interpretation of the deed as allowing shared use of Radnor's improvements was incorrect. Although the instrument does not expressly provide for either exclusivity or shared use, extrinsic evidence of the surrounding circumstances shows the deed necessarily grants the easement holder exclusive use of the land on which the improvements are located, because Rancho Carlton cannot use the land where the improvements are located without unreasonably interfering with Radnor's easement rights.

"The extent of a servitude is determined by the terms of the grant . . . ." (Civ. Code, § 806; *City of Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 578 (*Pasadena*).) An "exclusive" easement confers the right to exclude others. (*Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1024 (*Gray*).) The degree of exclusivity provided by a particular easement may range from conferring no right to exclude anyone whose use does not unreasonably interfere with the easement rights, to conveying the right to exclude everyone from any use of the land within the easement boundaries, including the owner of the servient tenement. (*Ibid.*)

An intent to convey an exclusive easement tantamount to a fee interest cannot be attributed to the grantor without a clear indication of the intention. (*Pasadena, supra*, 17 Cal.2d at pp.

578–579.)  Whether an easement amounts to ownership in fee depends on the circumstances, including the terms of any grant deed.  (*Blackmore, supra,* 150 Cal.App.4th at p. 1600.)  A deed granting unlimited use of the servient estate would effectively confer ownership, not an easement.  (*Ibid.*)  "In contrast, an easement incorporating a right of exclusive use may fall short of ownership in fee when the easement is restricted in scope. [Citation.]"  (*Ibid.*)

"Where the easement is founded upon a grant, as here, only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee.  The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement. [Citations.]  It is not necessary for him to make any reservation to protect his interests in the land, for what he does not convey, he still retains.  [Citation.]  Furthermore, since he retains the right to use the land reasonably himself, he retains also the power to transfer these rights to third persons.  [Citations.]" (*Pasadena, supra,* 17 Cal.2d at p. 579.)

Whether a particular use of the land by the servient owner is an unreasonable interference is generally a question for the trier of fact, unless the language of the grant is so clear and definite that the court can define the parties' rights as a matter of law from the instrument alone, without resorting to conflicting evidence.  (*Pasadena, supra,* 17 Cal.2d at pp. 579–580.)

The grant deed at issue in *Blackmore, supra,* 150 Cal.App.4th 1593, provided an express easement for "'parking and garage purposes'" over a specified area that had no existing garage.  (*Id.* at p. 1597.)  The *Blackmore* court held that

25

construction of a two-car garage on 11 percent of the easement area was within the scope of the easement. (*Id*. at p. 1599.) In addition, the easement holder was entitled to exclusive use of the garage, even though the grant deed did not use the term "exclusive," because exclusive control was necessary to protect the easement holder's rights. (*Id*. at pp. 1599–1600.) Shared control of the garage would result in conflict over the allocation of the parking spaces, security for the structure, and maintenance costs. (*Ibid*.) As a result, the court concluded that exclusive use of the garage was a necessary incident of the easement. (*Ibid*.) The deed did not contain any language expressly addressing exclusivity, but the court construed it to provide exclusive rights by necessity, because "it made no sense to construe a garage as being for anything other than exclusive use." (*Gray, supra,* 167 Cal.App.4th at p. 1029.)

In this case, we conclude the grantor intended to convey exclusive use of the barbecue and walkway on Parcel 2 to the owner of the dominant estate as a necessary incident of the easement. The improvements were originally constructed for the benefit of a single-family home before the property was subdivided into multiple lots. The barbecue and walkway are a continuous brick improvement connected to the home on the dominant estate, and there is no access to the improvements from the street or the surrounding properties. The owner of the servient tenement would have to clamber down the hillside to drop over the garden wall into the backyard to use the improvements on Parcel 2. To allow the owner of the servient tenement use of the barbecue or the walkway would unreasonably interfere with the easement rights of the dominant estate, because anyone using the improvements would be in the

26

yard of the dominant estate, mere feet from the doors of the home. As the trial court found, shared use of the improvements would cause myriad disputes, including issues of privacy, scheduling, noise, and maintenance costs. Rancho Carlton contends that an easement for a barbecue and walkway is not inherently exclusive, because neighbors often use common walkways and barbecues, such as in developments with common areas. Based on the circumstances, however, we disagree that the improvements in this case were intended for, or are amenable to, shared use. (Cf. *Haley v. Casa Del Rey Homeowners Assn.* (2007) 153 Cal.App.4th 863, 875 [finding unrestricted use of a common area for a walkway and other purposes mere feet from the patios and living spaces of individual condominium units would impermissibly invade the owners' privacy].)[6]

The property owners' historic use of the improvements on Parcel 2 supports our interpretation that the grant deed conferred exclusive use to the dominant estate. There is no evidence that any neighbor attempted to use the barbecue or walkway prior to Rancho Carlton. When a home was built on the servient estate, the home's design did not connect to the existing walkway and barbecue. In fact, a separate barbecue area was constructed for the home on the servient estate, and a retaining wall was erected that prevents access to the portion of the

_____

[6] We note that in common interest developments, patios and balconies located in a common area that are designed to serve a single separate interest are considered "exclusive use common area" and allocated by statute for the exclusive use of the separate interest unless the declaration for the common interest development provides otherwise. (Civ. Code, § 4145, subds. (a) & (b).)

easement where Radnor's improvements are located. The barbecue and the walkway on Parcel 2 had already deteriorated substantially when Radnor purchased the property, but the owner of the servient tenement did not conduct any maintenance, and there is no evidence that the owner of the servient tenement offered to share the cost of the extensive repairs that Radnor subsequently completed.

Conferring exclusive use of the improvements on Parcel 2 was not tantamount to conveying a fee estate in this case, because the scope of the easement is limited in several important ways. The improvements cover only a portion of the easement area. Radnor may use the improvements for backyard activities, but he does not have unlimited use of the property because he cannot change the character of the improvements, such as by constructing a guest house or installing a hot tub. And the easement is of limited duration, because it terminates when specified improvements are demolished.

## C. Remainder of Easement Area over Lot 19

The trial court ruled in its statement of decision that the language of the grant deed conveyed a non-exclusive easement over Lot 19, but the court, sitting in equity, awarded exclusive use of the property east of the 2007 wall to Radnor. The judgment prepared by Radnor and entered by the court, however, states that Radnor and his successors-in-interest have exclusive use of the portion of the easement east of the 2007 wall as a necessary incident of his easement rights. To the extent the court's ruling is based on construction of the grant deed, it is incorrect.

28

The deed does not provide the easement holder with the right to exclusive use of every inch of the easement area. The dominant estate may use the easement area for the physical improvements listed in the grant deed and rights necessarily incident thereto, but must use these rights in such a way as to place as little a burden on the servient estate as possible. There is no indication from the deed or the circumstances surrounding the creation of the easement that the grantor intended to convey exclusive use of the entire easement area as a necessary incident to having a barbecue, a walkway, and a retaining wall on a corner of the easement area. Every incident of ownership that is not inconsistent with the easement is reserved to the owner of the servient estate, and neither party may conduct activities in the easement area that unreasonably interfere with the other party's right to use the property. Undisputed facts show exclusive use of the entire easement area was not a necessary incident of the easement. The owner of the servient tenement constructed a home that invaded the easement area and installed a substantial retaining wall that effectively excludes the owner of the dominant tenement from the west end of Parcel 2. There is no evidence these activities unduly burdened Radnor's use of the easement; in fact, Radnor expressly did not object to the encroachment. We construe the grant deed as allowing Rancho Carlton to use the easement area outside of the location of the barbecue and walkway for any activity, as long as it does not unreasonably interfere with Radnor's use of the easement for the improvements listed in the deed.

### D. Termination

Rancho Carlton contends that the trial court's interpretation of the termination provision of the grant deed was erroneous. We conclude that the trial court placed the proper construction on an ambiguous provision.

There are several ambiguities in the termination provision for the easement on Parcel 2, which states "the above easement will terminate when the improvements now located on the above described portions of Lots 19 and 20 . . . have been demolished." As a result of these ambiguities, it is not clear which improvements trigger termination when they are demolished. The grant deed describes a portion of Lot 19. It does not describe a portion of Lot 20 in the same manner. It conveys all of Lot 20 in fee simple, reserving an easement to the grantor for sewer purposes.

At first glance, it appears the termination language refers to the improvements expressly listed within the same provision for the easement on Parcel 2, namely, the barbecue, the walkway, and the retaining wall. The grant deed provides a specific legal description of the portion of Lot 19 where these improvements are located. But the termination language also refers to improvements located on Lot 20. If the drafter intended the easement to terminate based solely on demolition of improvements on Lot 19, there was no need to mention Lot 20. In construing the deed, we give purpose to every part and do not construe any term to be superfluous. The provision must require demolition of more than just the improvements existing on Lot 19.

30

The provision could potentially refer to the improvements listed on Lot 19, but also include the part of the walkway that is located on Lot 20, since the walkway is located on Lots 19 and 20. But the termination language concerns improvements on the "above-described portions" of Lot 19 and Lot 20. There is no legal description of Lot 20 that is limited to the location of the walkway.

The legal description of Lot 20 in the grant deed covers the entire property in fee simple, reserving an easement to the grantor for sewer purposes. The deed does not describe the improvements existing on Lot 20, but extrinsic evidence establishes that the house on Lot 20 existed at the time the property was divided and the easements were created. In context, the termination provision can be construed to refer to the improvements listed on the portion of Lot 19 described in the deed and the improvements on Lot 20 other than the sewer easement. In other words, the easement will terminate when the barbecue, the walkway, the retaining wall, and the house are demolished, but it is not necessary for the sewer improvement on Lot 20 to be demolished before the termination provision applies.

Under the rules of construction, we interpret the easement grant liberally in favor of the grantee. Requiring demolition of all the improvements controlled by the owner of the dominant estate on Lots 19 and 20 is a reasonable liberal interpretation of the provision. In addition, it is a logical interpretation under the circumstances of this case. If the easement were to terminate when only the improvements located on Lot 19 are demolished, the existing house on Lot 20 would be wedged into the hillside without access to outdoor living space. The existing house on Lot 20 would still have a need for an easement in order to have a

31

barbecue, walkway, and retaining wall.  However, if the improvements on both Lot 19 and Lot 20 are demolished, termination of the easement makes sense: there would be no continuing need for an easement on Lot 19, as any new construction on Lot 20 could reconfigure the design of the home and the yard to build within the boundaries of Lot 20.  We conclude the trial court correctly interpreted the termination provision to require demolition of the existing home on Lot 20.

## Burden on Servient Tenement

Rancho Carlton contends Radnor overburdened the easement with improvements that were not contemplated by the grant deed, thereby extinguishing the easement.  We conclude the trial court's finding that Radnor's repairs and renovation did not constitute an undue burden on the servient tenement is supported by substantial evidence.

"The owner of a dominant estate may do that which is reasonably necessary to enjoy the easement and, as an incident thereto, keep it in repair and fit for use.  [Citation.]  But the easement may not be substantially altered without the consent of the owner of the servient estate.  [Citation.]" (*Scruby, supra,* 37 Cal.App.4th at pp. 706–707.)

When Radnor purchased his property, the barbecue and the brick improvements required substantial repairs.  Radnor's replacement of the rotting wooden deck adjacent to the house and a portion of the broken, uneven brick walkway with a seamlessly integrated wooden deck did not change the character of the walkway under the circumstances of this case.  The garden wall next to the walkway was intact, the walkway area continued to

be covered with a flat surface to walk upon, and the footprint of the improvement burdening Lot 19 did not increase, other than a small extension of the walkway approximately three feet by four feet for a cantilevered portion of the wooden deck. The minor extension of the walkway protruding over the scrub on the hillside next to Radnor's house did not significantly burden the servient tenement in this case.

Before Radnor's renovation, the brick walkway was spacious enough to allow for normal backyard activities, including eating a meal at a table, reading a book in a chair, using exercise equipment, or socializing with guests at an outdoor gathering. Radnor did not change the walkway in the area near the barbecue, except to repair bricks. He replaced a non-operational grill with a structure that was integrated into the existing brick and can operate as a fireplace or barbecue. Adding lighting did not change the character of the improvements. He also replaced a dead tree that the owner of the servient tenement had not maintained. The court's finding that Radnor's repair and renovation did not exceed the scope of the easement is supported by substantial evidence.

## Remedy

We must reverse the judgment because it is based on incorrect interpretations of the scope of the easement conveyed over Lot 19 in the 1965 grant deed. First, the judgment rests on the incorrect interpretation that the grant deed conveyed a nonexclusive easement over Lot 19. Second, the judgment also appears to be based on the incorrect interpretation that the deed conveyed exclusive control of the entire easement area as a

necessary incident to having a barbecue, a walkway, and a retaining wall on the property. We remand for the trial court to enter a new judgment providing relief based on our interpretation of the 1965 grant deed as conveying exclusive use of the area where the improvements are located as a necessary incident of the easement and conveying nonexclusive use of the remaining easement property.

"An easement owner may sue to enjoin an obstruction or an unreasonable interference with her specific, limited, definable use of the easement by the servient owner. [Citations.] Or the easement owner may bring a cause of action for declaratory and injunctive relief to resolve a dispute regarding the nature and scope of that easement. [Citation.]" (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1175.)

We also note that the judgment must be reversed to the extent it is grounded in an equitable remedy, and not based on a correct interpretation of the grant deed. The cases that Radnor has cited on appeal to support the trial court's equitable remedy have no application to the circumstances of this case. If a trial court finds a trespasser has encroached on another's property and certain conditions are met, an equitable doctrine known as the "doctrine of relative hardships" or "balancing of the conveniences" allows the trial court to fashion an equitable property interest that preserves the encroachment rather than granting injunctive relief compelling the trespasser to remove the encroachment. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 758–759 (*Hirshfield*); *Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 19 (*Shoen*); *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 183–184 (*Ranch*).) In this case, however, there was no finding that Radnor's use of the easement constituted a trespass

or an encroachment, which is a prerequisite to applying the doctrine. The house and the 2007 wall constructed by Rancho Carlton's predecessor invaded the easement area, but the owner of the servient tenement was entitled to use the property for any purpose that did not unreasonably interfere with Radnor's right to use the easement area for a barbecue, walkway, and retaining wall. "Further, 'the equitable nature of this doctrine does not give a court license to grant easements on the basis of "whatever [a court] deems important," even when [the] prerequisites are absent.' (*Shoen, supra*, 237 Cal.App.4th at p. 19.)" (*Ranch, supra*, 38 Cal.App.5th at p. 183.)

In particular, the case of *Hirshfield, supra,* has no application to the instant case. In *Hirshfield, supra,* 91 Cal.App.4th 749, the owners of adjacent properties misunderstood the location of the property line and each built improvements that encroached on the other's property. "Under [the relative hardship] doctrine, once the court determines that a trespass has occurred, the court conducts an equitable balancing to determine whether to grant an injunction prohibiting the trespass, or whether to award damages instead. [Citation.]" (*Id.* at p. 759.) The court in *Hirshfield* found there was an encroachment, but rather than grant injunctive relief compelling the parties to remove the encroaching improvements, the court applied the relative hardship doctrine to fashion an equitable property interest for each party in the other's property akin to an easement. In contrast, in the instant case, Radnor's rights to the improvements are protected by the written easement. There is no trespass on the easement area, so there is no basis to fashion an equitable interest to permit it under the authorities cited by Radnor.

35

## DISPOSITION

The judgment is reversed with directions to enter a new and different judgment providing relief in accordance with this opinion.  In the interests of justice, the parties are ordered to bear their own costs on appeal.


MOOR, J.


We concur:


BAKER, Acting P. J.


KIM, J.

# APPENDIX



005

PARCEL 1:

Lot 20 of Tract No. 6714, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 76 Page 18 of Maps, in the office of the County Recorder of said County.

EXCEPTING and reserving to the Grantor herein, his heirs, successors, and assigns, an easement over the easterly 6 feet of said Lot 20 for sewer purposes with the right of ingress and egress thereto.

PARCEL 2:

An easement for barbecue, a walkway and concrete and brick retaining wall and incidental purposes over that portion of Lot 19 of Tract No. 6714, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 76 Pages 18 and 19 of Maps, in the office of the County Recorder of said County, described as follows:

Beginning at the southeasterly corner of said Lot 19, thence westerly, along the southerly line of said Lot 19, which is the arc of a curve concaved to the South with a radius of 100.00 feet, a radial line to said corner bears North 8° 50' 50" East, an arc distance of 33.19 feet to a point where a radial line bears North 10° 10' West, thence North 3° 00' West 54.89 feet to the northerly line of said Lot 19; thence North 85° 30' East 45.06 feet to the northeasterly corner of said Lot 19; thence South 8° 50' 50" West 58.67 feet to the point of beginning.

It is understood and agreed that the above easement will terminate when the improvements now located on the above described portions of Lots 19 and 20 of said Tract 6714 have been demolished.

PARCEL 3:

An easement for a barbecue and incidental purposes over that portion of Lot 93 of Tract No. 7798, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 101 Pages 13 et seq., of Maps, in the office of the County Recorder of said County, described as follows:

Beginning at the southwesterly corner of said Lot 93; thence North 11° 28' 16" West along the westerly line of said Lot 93, 0.76 feet, thence North 86° 42' 30" East 11.19 feet; thence South 1° 17' 30" East 0.12 feet to the southerly line of said Lot 93; thence South 85° 30' West along the southerly line of said Lot 93, 11.05 feet to the point of beginning.

PARCEL 4:

An easement for a patio, concrete and brick retaining walls and incidental purposes over that portion of Lot 93 of Tract No. 7798, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 101 Pages 13 et seq. of Maps, in the office of the County Recorder of said County, described as follows:

Beginning at the southeasterly corner of said Lot 93; thence South 8° 30' West, along the southerly line of said Lot 93, 12.89 feet; thence North 5° 24' 40" East 40.32 feet; thence South 84° 07' 28" East 13.00 feet to the easterly line of said Lot 93; thence South 5° 52' 32" West, along the easterly line of said Lot 93, 38.00 feet to the point of beginning.

PARCEL 5:

An easement for concrete and brick retaining wall, steps and patios and incidental purposes over that portion of Lot 94 of Tract No. 7798, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 101 Pages 13 et seq. of Maps, in the office of the County Recorder of said County, described as follows:

Beginning at the southwesterly corner of said Lot 94; thence North 5° 52' 32" East, along the westerly line of said Lot 94, 36.00 feet; thence South 61° 29' 00" East 65.39 feet to the easterly line of said Lot 94; thence South 5° 51' 40" West, along the easterly line of said Lot 94, 26.00 feet to the southeasterly corner of said Lot 94; thence North 71° 30' West along the southerly line of said Lot 94, 60.00 feet to the point of beginning.

It is understood and agreed that the above easement will terminate when the improvements now located on the above described portions of Lot 20 of said Tract No. 6714 and Lot 94 of said Tract No. 7798 have been demolished.



N

Scale: 1" = 8'

Parcel 4

⑨③
APN: 5576-010-050
6390 W. Quebec Drive

Stucco
Retaining
Walls

Stone
Patio

Stucco
Wall

Steps

Parcel 5

⑨④
APN: 5576-010-051
6380 W. Quebec Drive

Exposed Metal
Drain Pipe

Concrete Wall

Concrete Pad

-3.1'

Property Line

N 85° 30' 00" E
26.00'

N 71° 30' 00" W

Property Line

59.00'

Parcel 3

Brick
Walls

Barbecue

Wood Wall

Brick
Patio

Brick Walls

Concrete
Retaining Wall
with Wrought
Iron Atop

58.68'

-9.9'

Planted
Slope

Pond
Area

Concrete Walk

Concrete Walk

Steep Brush-Covered Slope

73.31'

⑲
APN: 5576-010-028
6393 W. Bryn Mawr Drive

Brick
Bench
Wall

Wood Deck

Wood Rail

-10.0'

Multi-Level
House

6.3'

Parcel 1

Railroad
Ties Wall

Upper
Building Line

⑳

Parcel 2

Planted
Slope

Stucco
Retaining
Wall

Property Line

N 8° 50' 33" E

Stone
Retaining
Wall

Northerly Face
of Wall is on
Property Line

6.8'

Lower
Building Line

Concrete
Curb

Property Line

�21
APN: 5576-010-030
6383 W. Bryn Mawr Drive

Centerline Point of
Intersection Established
by Ties per
PWFB 1518-762

Concrete Curb

18.32'

11.13'

Concrete
Roadway

Broken
Curb

△ = 16° 58' 42"
R = 100.00'
L = 29.63'

Property Line

N 64° 10' 45" W (Basis of Bearings)

N 64° 10' 45" W
23.17'

N 34° 48' 40" E

Property Line

30'

15'

15'

¢

¢

Bryn Mawr Drive

84.40'